UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – ORLANDO

**DOMINIQUE DAVIS, an individual doing business as Nikos,**
Plaintiff,

v.                                         Case No.: 6:25-cv-2169-CEM-NWH

**YELP INC.,**
Defendant.

## COMPLAINT

Plaintiff, **Dominique Davis**, an individual doing business as **Nikos**, hereby files this Complaint against **Yelp Inc.** ("Defendant"), and states as follows:

## I. INTRODUCTION

This civil action seeks redress for Defendant Yelp Inc.'s unauthorized commercial use of the Plaintiffs' name, image, likeness, and distinctive brand identifiers - Name Image Likeness - ("NIL") for its own financial benefit, without consent or compensation, contrary to both the letter and spirit of federal and Florida right of publicity doctrines, common law unjust enrichment, and the Lanham Act's protections against false endorsement and trademark dilution. Yelp's business model depends on creating and monetizing online business profiles — including those of Plaintiffs — featuring logos, photographs, and proprietary identifiers to attract advertising revenue.

Plaintiffs allege that Yelp's actions constitute (1) violation of Florida's statutory and common-law right of publicity; (2) false endorsement, false designation of origin, and dilution under § 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125; (3) unjust enrichment; and (4) unfair or deceptive acts and practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.

## II. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 for the Lanham Act claims and supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims.
2. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts substantial business in this District, and the events giving rise to these claims occurred here.

## III. PARTIES

1. **Plaintiff Dominique Davis** ("Plaintiff") is a natural person residing in **Orange County, Florida**. Plaintiff is the founder, Chief Executive Officer, and Chairman of the Board of **7Branches Corporation**, which operates the food service business **Nikos**, a Florida-based enterprise established in 2020. Plaintiff conducts business in the State of Florida under the trade name **Nikos** and is the exclusive creator and owner of the business's intellectual property, brand identity, and visual likeness. Plaintiff brings this action **in his individual capacity**, as his personal name, likeness, and reputation have been directly and adversely affected by Defendant's actions.
2. **Defendant Yelp Inc.** ("Defendant") is a Delaware corporation with its principal place of business at **140 New Montgomery Street, San Francisco, California 94105**. Upon information and belief, Defendant conducts continuous and systematic business in the State of Florida by maintaining business listings, collecting advertising revenue, and offering services to Florida businesses through its online platform. Defendant is not registered as a domestic or foreign entity with the **Florida Department of State Division of Corporations (Sunbiz)** but derives substantial revenue from Florida-based activities and thus transacts business within this jurisdiction.

## IV. FACTUAL ALLEGATIONS

1. Without authorization, Yelp created and maintains a public business profile for Nikos on its website (https://www.yelp.com/biz/nikos-orlando), displaying Plaintiffs' name, logo, and photographic likeness.
2. **Yelp unilaterally creates, maintains, and controls business pages for virtually every business in the United States that it can identify (including Nikos), featuring the business name, logo, photographs, address, contact information, and often an associated map, all displayed prominently alongside advertisements and enhanced paid listings from both the subject business and its competitors.**
3. **Yelp aggressively markets premium ad placements, enhanced profile opportunities, video features, and analytics, using as the primary draw the listing of the business's name, image, likeness, and commercial attributes—without ever seeking consent or offering compensation to the business for such commercial use.** Yelp profits from the businesses' identities, which are the essential "magnet" drawing both consumers and advertisers.
4. Plaintiff never consented to this use and have formally requested that Yelp remove or correct the profile and its false information. Yelp refused, citing "public information" and "free-speech principles."
5. Yelp derives substantial advertising revenue from such pages. Its 2023 Form 10-K reports over $1.3 billion in advertising income — the majority linked to traffic generated by unpaid business profiles.
6. Yelp uses the Plaintiffs' business identity as an anchor for paid ads and competitor placements, diverting consumer traffic and profiting from the Plaintiffs' reputation without authorization.

7. Yelp's practice is non-transformative and commercial in nature. It is distinguishable from editorial or news use and does not constitute protected speech under the First Amendment.

## Plaintiff's Case and Injury

8. **Niko's name, logo, and other distinctive business identifiers are displayed by Yelp on its digital platform without the Dominique's permission.** Yelp further uses these NIL elements in association with competitor advertising, making Nikos both the object and vehicle for Yelp's paid advertising model.
10. **Nikos has made requests to Yelp to control, modify, or be compensated for use of its NIL and received none of those remedies.** Instead, its brand continues to be appropriated by Yelp for purposes of soliciting paid ads from both Nikos and competitors, with no compensation attributable to Nikos for the value of this use.
11. **Yelp's practice deprives Nikos and similarly situated businesses of the economic value represented in the right to control, license, and profit from their brand and identity, exactly as the right of publicity doctrine and NIL jurisprudence protect.** The absence of consent, improper benefit to Yelp, and the non-transformative, decidedly commercial context distinguish this practice from protected news reporting or commentary.

## V. CAUSES OF ACTION

### Count I – Violation of Florida Right of Publicity (§ 540.08, F.S.)

Yelp's display and commercial use of Plaintiffs' name and likeness for advertising constitute an unauthorized commercial use under § 540.08. See *Waitt v. National Geographic Society*, S.D. Fla. 2015; *Hart v. Electronic Arts*, 717 F.3d 141 (3d Cir. 2013) (unauthorized use of identity for profit not protected by First Amendment).

### A. Florida Right of Publicity Statute

12. **Florida Statute § 540.08** prohibits the unauthorized commercial use of a "name, portrait, photograph, or other likeness of any natural person" for the purposes of trade or commercial advertising without express consent.
13. **Courts have systematically recognized "right of publicity" claims where an entity monetizes an individual's or business's name or likeness for commercial gain, with no consent and no compensation provided, unless narrow statutory exceptions apply (news reporting, bona fide expressive works, etc.), which do not cover Yelp's commercial advertising and cross-promotion practices.** While some decisions hold that the statutory cause of action is limited to "natural persons" and not business entities,

> Florida's common law misappropriation tort and right of privacy extend similar protections to business goodwill and identity elements that have commercial value.
> 14. **Yelp's use of Nikos's name, image, and likeness constitutes "public use for purposes of trade or for any commercial or advertising purpose," as Yelp directly derives advertising revenue from such use and actively sells advertising based on the visibility of Nikos's business identity on its platform.** Yelp received no written or oral consent from Plaintiff.
> 15. **Statutory exceptions (e.g., news reports or bona fide presentations of public interest) do not apply where the "primary function" of the use is commercial promotion, as Yelp's is—not mere reporting of news or matters of public interest.** Yelp's use is not transformative, nor does it serve an expressive, editorial, or parody function. The Florida Supreme Court has held that the statute only applies to uses which directly promote a product or service, and Yelp's advertising and business directory squarely fit within that scope.
> 16. **The right to exploit one's identity, goodwill, and commercial brand extends posthumously in Florida by statute for forty years, demonstrating the legislature's view of these rights as a form of property meriting robust protection.**

**B. Florida Common Law Right of Publicity and Misappropriation Tort**

> 17. **Even if the statute is interpreted as limited to natural persons, Florida common law recognizes a tort for misappropriation of name, image, and likeness, which has been applied to protect business names, distinctive commercial signs, and other indicia of identity used to promote products or services without authorization.** This action protects businesses against unauthorized use that causes confusion, sponsors trade on the goodwill of the business, or otherwise damages the business's proprietary interests.
> 18. **Precedent confirms that the misappropriation of the commercial attributes of a business or individual for advertising or commercial purposes is actionable under common law, regardless of celebrity status or broad public recognition.** Florida courts have rejected defenses asserting that mere fact of being listed in a directory or being of limited commercial "fame" immunizes the defendant from liability.
> 19. **Yelp's conduct constitutes actionable misappropriation under Florida law, entitling Plaintiffs to actual damages, disgorgement of profits, injunctive relief, and punitive damages where appropriate.**

### Count II: Violations of the Lanham Act (15 U.S.C. § 1125)

**A. False Endorsement and Trademark Violation (15 U.S.C. § 1125(a))**

By using Nikos's name and logo to host ads and competitor links, Yelp creates a false impression of association or endorsement. See *Allen v. National Video*, 610 F. Supp. 612 (S.D.N.Y. 1985); *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015).

> 20. **Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))** provides broad civil liability for any party who, in commercial advertising or promotion, uses any name, term, symbol, or device likely to "cause confusion, or to cause mistake, or to deceive as to the affiliation,

    connection, or association of such person with another person, or as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person."

21. **By using Nikos's name, logo, and trade dress in direct association with Yelp's own platform and adjacent to paid advertisements, competitor advertising, and promotional services without consent or compensation, Yelp creates a likelihood of confusion or false association in the mind of consumers, suggesting endorsement, sponsorship, or approval by Dominique Davis of Yelp's business model, advertising clients, and business practices.**
22. **Yelp's sale of enhanced advertising to Nikos and its competitors, using Nikos's own NIL as the anchor around which Yelp displays advertising, further aggravates the likelihood of confusion.** Such use is actionable as a false endorsement, where the goodwill of the business is used to promote a service from which the business derives neither compensation nor control.

### B. Trademark Dilution (15 U.S.C. § 1125(c))

Yelp's use of business names and logos in commercial advertising dilutes distinctive marks by blurring and tarnishment. See *Mosley v. V Secret Catalogue*, 537 U.S. 418 (2003).

23. **For well-known businesses, unsanctioned use of their marks by Yelp can rise to the level of dilution under the Lanham Act, both by "blurring" (eroding distinctiveness) and by "tarnishment" (harming the reputation of the mark) [15 U.S.C. § 1125(c)].** Yelp's economically motivated use of business names and identities in highly commercial contexts impairs the goodwill of those marks—especially where businesses are powerless to prevent association with negative or irrelevant content, including damaging reviews or advertisements by competitors. The Lanham Act allows for injunctive relief and, for willful dilution, monetary remedies.

### C. Cybersquatting and Unauthorized Domain Monetization

24. **To the extent Yelp registers, traffics in, or uses internet domain names that are confusingly similar to the registered, common-law, or trade name rights of listed businesses without consent or license, it may be liable under the Anti-cybersquatting Consumer Protection Act as codified at 15 U.S.C. § 1125(d).** Factors considered by the courts include bad faith intent to profit, the absence of any bona fide offering of goods or services under the name by Yelp, and whether such use diverts consumers for commercial gain by creating a likelihood of confusion as to source, sponsorship, or association.

### Count III – Unjust Enrichment (Common Law)

Plaintiffs conferred a benefit — the use of their brand identity — from which Yelp knowingly profits without compensation. Retention of those profits is inequitable. See *Extra Corp. v. Ramsaran*, Fla. 4th DCA 2019.

25. **Under the doctrine of unjust enrichment,** a plaintiff may recover where: (1) a benefit is conferred on the defendant by the plaintiff, (2) the defendant knowingly accepts and retains the benefit, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value.
26. **Yelp has received and continues to reap substantial financial benefits by using the NIL and goodwill of Nikos and similarly situated businesses as a driver of traffic, user engagement, and—ultimately—advertising revenue.** Yelp's user traffic and sellable advertising inventory derive directly from its mass aggregation and prominent display of business identities and branding. Yelp does not seek consent, nor does it provide any compensation to the businesses whose NILs it exploits.
27. **The benefit conferred is unmistakable and is accepted with knowledge by Yelp on an ongoing and systematic basis.** Yelp's enrichment is unjust, given the absence of a contract, license, or other justification, and compensation is both required in law and equity.

**Count IV – Florida Deceptive and Unfair Trade Practices Act (FDUTPA)**

Yelp's practice of refusing removal and misrepresenting ownership of business profiles constitutes an unfair and deceptive act under § 501.201 et seq. See *Porsche Cars N.A. v. Diamond*, 140 So. 3d 1090 (Fla. 3d DCA 2014).

---

## LEGAL STANDARDS AND RELEVANT JURISPRUDENCE

### Name, Image, and Likeness (NIL) and Right of Publicity Principles

28. **The right to control the commercial use of one's identity, known alternately as the "right of publicity" and, more recently, "NIL rights," applies to both individuals (famous or not) and, under appropriate circumstances, to businesses and other entities with commercially valuable identities.** This right is widely recognized by statute and common law in over thirty states, and in Florida, by statute and common law.
29. **The right of publicity has its roots in privacy law, but is now recognized as a separate property right—freely transferable, licensable, and descendible according to the states that recognize post-mortem rights.** Remedies available in right of publicity actions include monetary damages, disgorgement of unfair profits, reasonable royalty measures, injunction, and—in egregious cases—punitive damages.
30. **Courts have consistently held that commercial entities cannot use the NIL of another in advertising, marketing, or the direct promotion of products or services without consent and compensation, unless the use falls squarely within narrow exceptions (e.g., protected news reporting, editorial commentary, or expressive transformative works) [Waits v. Frito-Lay, Inc.; Keller v. Electronic Arts; Zacchini v. Scripps-Howard].** The use must be more than incidental or fleeting, and courts have repeatedly rejected claims of implied consent where written or explicit authorization is lacking.

31. **In the state of Florida, statutory protection under § 540.08 and common law misappropriation co-exist and complement each other, covering a wide spectrum of unauthorized commercial exploitation, including the trade use of a business's name, logo, or trade dress in advertising or digital directory services.** The narrow "news reporting" exception provides protection for bona fide editorial uses, but not for direct or indirect commercial advertising, which describes Yelp's primary use case.

## NIL and Publicity Rights: Parallel Athlete Litigation and Precedents

32. **The last decade has seen an explosion of jurisprudence recognizing the enforceability—and economic value—of NIL rights, particularly through successful litigation brought by NCAA athletes and professional sports unions.**

- *O'Bannon v. NCAA* (9th Cir. 2015): The Ninth Circuit recognized antitrust and right of publicity claims for the NCAA's unauthorized commercial use of student-athletes' NIL, holding that those restrictions violated antitrust law and that athletes had a cognizable property interest in their NILs.
- *NCAA v. Alston* (594 U.S. 69, 2021): The Supreme Court held the NCAA's restrictions on athlete compensation for NIL use were unlawful restraints of trade, opening the door for athletes to license their NILs and participate in revenue generated from the use of their identities in television, video games, and merchandise.
- *MLB Players Inc. v. DraftKings and Bet365* (E.D. Pa. 2025): The federal court allowed claims to proceed against DraftKings for the unauthorized commercial use of MLB player NILs in betting promotions, pointedly rejecting the defense that merely discussing newsworthy topics created an exemption for commercial use ravelling as editorial content. The Court highlighted that the use of NIL as the "draw" for commercial advertising is actionable and First Amendment arguments are weak in this context.

33. **Courts and legislatures have repeatedly found that the use of NIL in purely commercial settings—untethered to bona fide news, commentary, or expressive transformation—is subject to publicity rights claims and is not immunized by the First Amendment.** The recent string of NCAA settlements and ongoing state law expansions demonstrate an elevated judicial and legislative concern for protecting the economic value of identity in all market contexts, not just sports and entertainment.

34. **The principles derived from these sports and celebrity NIL cases apply squarely to Yelp's use of commercial business NIL: (a) the NIL is a valuable property interest; (b) the use is commercial and revenue-generating for the alleged infringer; (c) consent or license is lacking; and (d) the user (Yelp) claims First Amendment and newsworthiness defenses that fail under the prevailing legal standards for commercial advertising.** Yelp's commercial use is distinct from "editorial" or "informational" use; the consumer-facing pages, ad placements, and competitive bidding on business profiles are designed to monetize the NIL for Yelp's benefit and are therefore actionable.

## First Amendment and Commercial Speech: Limits, Exceptions, and Pretext

35. **Yelp may assert the First Amendment as a defense, arguing that its platform is a public forum for consumer speech and that listing business information constitutes news or public interest material. However, First Amendment protection is generally limited when use of identity is for commerce, not commentary or news; even the Supreme Court has held that commercial speech, especially advertising, is entitled only to intermediate scrutiny (Central Hudson Test).**
36. **Under the Central Hudson framework, commercial speech may be regulated—and speakers may be liable where their activity is false, misleading, or concerns unlawful activity, or where a substantial interest is directly advanced by regulation and is not more extensive than necessary to serve that interest.** In cases involving the right of publicity and trademark rights, courts have found commercial uses like advertising, promotions, and endorsements outside the scope of robust First Amendment protection and subject to liability where consent is lacking.
37. **Florida law and federal courts recognize specific and robust exceptions to the First Amendment for right of publicity and commercial misappropriation claims:**

- **Advertising is not immunized as "news" even if it references public events or uses factual information.**
- **Commercial use under the "guise" of editorial content (as with cross-promotion in Yelp ads) fails the Central Hudson test and is actionable for both publicity rights and false endorsement claims.**
- **"Transformative use" and "newsworthiness" exceptions only apply where the use is substantially expressive or tied to bona fide public interest reporting; not to routine, commercial platform exploitation and ad sales.**

## Lanham Act: False Endorsement and Trademark Misappropriation

38. **The Lanham Act creates statutory liability for uses in commerce likely to create confusion as to the source, sponsorship, or approval of a business, and for dilution of a mark's distinctiveness or reputation [15 U.S.C. § 1125(a), (c)].** Yelp's systematic use of business names and logos—without authorization and adjacent to paid advertisements or in context that can imply endorsement—is squarely within the scope of actionable conduct.
39. **Precedent holds that the use of the name, likeness, or identifying marks of another in commercial promotion is not "fair use" and creates liability for both false endorsement and dilution when there is a likelihood of confusion or harm to brand distinctiveness.** Exceptions for nominative fair use or news reporting do not apply where the use is directly in service of advertising or profit.
40. **Yelp's facilitation of competitor advertising or placement of secondary advertisements tied to a business's own NIL exacerbates the risk of confusion and creates actionable forward and reverse confusion. Both are recognized as bases for Lanham Act liability under 15 U.S.C. § 1125(a) and relevant case law.**

## Unjust Enrichment/Quasi-Contract

41. **The doctrine of unjust enrichment exists to prevent one party (here, Yelp) from profiting at the expense of another (the business whose NIL is exploited) where there is no contract and where it would be inequitable for the benefiting party to retain the value.**

- The benefit conferred by Nikos and similarly situated businesses is clear and direct (the creation of traffic, advertising inventory, consumer trust, and Yelp's core product value).
- Yelp knowingly receives this benefit, as the platform is built upon mass business identity aggregation.
- Circumstances are inequitable: Yelp extracts value without consent or compensation, frustrates the business's ability to control its own identity, and reserves to itself the exclusive right to profit from the commercial use.

42. **Restitution remedies should be available to recover the value conferred on Yelp, measured by unjust profits gained or reasonable royalty—the same remedy structure used in recent NIL litigation against sports entities and publishers.**

## DEFENDANT'S LITIGATION HISTORY AND RELEVANT BUSINESS PRACTICES

43. **Yelp has been the subject of multiple lawsuits asserting improper, exploitative, or misleading use of business and individual identity, including for trade practices and trademark infringement. While Yelp has settled certain claims (e.g., Village Voice Media trademark litigation), its core practice of profiting from the NIL of thousands of businesses, without negotiated consent, remains unaddressed by any sweeping judicial remedy.**
44. **Yelp's prior class action litigation history involves allegations of (a) false advertising related to its platform, (b) aggressive sales tactics, (c) alleged extortionate leveraging of negative reviews, and (d) manipulation of business visibility or competitive ad placement.** None of these prior suits has directly challenged the company's mass NIL monetization under right of publicity and Lanham Act theories as articulated here.
45. **The business model persists and continues to expand, leveraging mass-aggregated NIL for advertising revenue at massive scale and without compensation to those whose commercial identity is the platform's principal draw.** Yelp is thus not only on notice that its activities implicate significant legal risk—they have made strategic decisions knowingly assuming that risk.

---

## VI. DAMAGES AND RELIEF REQUESTED

Plaintiffs seek:

1. Actual and statutory damages, including disgorgement of profits and reasonable royalties: in line with precedent in recent NIL and publicity rights litigation.

2. Injunctive relief requiring Yelp to cease unauthorized use and remove the offending profiles upon request;
3. Punitive damages for willful and knowing conduct appropriation where authorized by Florida and federal law.
4. Equitable relief, including but not limited to:
   - (a) An injunction barring Yelp from any future commercial use of the business NILs of Plaintiffs without written consent or a compensatory arrangement.
   - (b) A requirement that Yelp remove, upon request, any business page for which there is a bona fide NIL or publicity rights objection.
   - (c) An accounting of all revenue and profits directly attributable to the use of business NIL.
   - (d) Notice to affected businesses and a claims procedure for compensation.
5. Attorney's fees and costs as permitted by law; and
6. Any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Yelp on all counts stated herein; b. Award damages in an amount to be proved at trial; c. Award prejudgment and post-judgment interest as allowed by law; d. Award attorney's fees and litigation costs; e. Enter such injunctive and declaratory relief as may be necessary to protect Plaintiffs and similarly situated businesses from future unauthorized commercial exploitation of their NIL; f. Order such other and further relief as the Court may deem just and proper.

## VII. JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

## VIII. SIGNATURE BLOCK

Respectfully submitted,

*/s/ Dominique Davis*

**Dominique Davis**
DOMINIQUE DAVIS, an individual doing business as Nikos
Orlando, Florida
( 407 ) 856-8110
dominique.adavis@outlook.com **Pro Se Plaintiff**

**Supporting Authorities**

- *Hart v. Electronic Arts*, 717 F.3d 141 (3d Cir. 2013) – unauthorized use of identity is actionable commercial use.
- *Waitt v. National Geographic*, S.D. Fla. 2015 – commercial republication of identity requires consent.
- *Hy Cite Corp. v. Badbusinessbureau.com*, 418 F. Supp. 2d 1142 (D. Ariz. 2005) – platform may lose § 230 immunity if it actively creates defamatory content.
- *Floyd v. C. C. Systems*, 36 So. 3d 836 (Fla. 1st DCA 2010) – failure to remove false material after notice creates liability.
- *O'Bannon v. NCAA* and *Alston* line of cases – NIL monetization requires consent and compensation.

# DOCUMENT 4A – EXHIBIT LIST

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA ORLANDO

**DOMINIQUE DAVIS, an individual doing business as Nikos,**
Plaintiff,

v.                                                  Case No.: _____

**YELP INC.,**
Defendant.

## EXHIBIT LIST

Plaintiffs respectfully submit the following Exhibits in support of the Complaint:

Exhibit A – Screenshot of the Yelp webpage displaying the business name "Nikos".

Exhibit B – Screenshot of the Yelp webpage displaying the Plaintiffs' business logo.

Exhibit C – Screenshot of the Yelp webpage displaying a photograph of Plaintiff.

Exhibit D – Copy of the cease-and-desist letter sent to Defendant dated July 29, 2025.

Exhibit E – Copy of Defendant's response to cease-and-desist communication.

Exhibit F – Proof of business ownership (e.g., State of Florida Sunbiz registration for 7Branches Corporation).

Exhibit G – Proof of use and ownership of business logo/branding (e.g., marketing materials, menus, product labels).

Exhibit H – Evidence reflecting confusion or harm to Plaintiffs' business resulting from Defendant's unauthorized use.

Exhibit I – Photograph(s) establishing Plaintiff's identity and likeness as displayed on the Yelp webpage.

Respectfully submitted,

_____
Dominique Davis, Pro Se Plaintiff
DOMINIQUE DAVIS, an individual doing business as Nikos
Orlando, Florida
(407) 856- 8110
Email: dominique.adavis@outlook.com