APR 13 2026 AM10:16
FILED - USDC - FLMD - ORL

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**DOMINIQUE DAVIS,**

Plaintiff,

v.

**6:25 – cv - 02169- CEM-NWH**

**YELP INC.,**

Defendant.

## AMENDED COMPLAINT

## I. INTRODUCTION

1. This action arises from Defendant Yelp Inc.'s commercial use, control, publication, and monetization of Plaintiff's identity, brand, and business profile without consent.
2. Plaintiff Dominique Davis is commonly known as "Niko." The NiKos brand is derived from Plaintiff's personal identity, public persona, and goodwill developed through his food-truck business and related public-facing commercial activity.
3. Defendant Yelp Inc. created, maintains, controls, and monetizes a business profile associated with Plaintiff and NiKos, using Plaintiff's name-derived identity, branding, photographs, and business identifiers as content that draws traffic, supports advertising inventory, and generates platform value.
4. This case concerns Yelp's own commercial conduct. It is not based solely on third-party speech. It is based on Yelp's creation, organization, publication, maintenance, display, monetization, and commercial exploitation of Plaintiff's identifying material and business profile.
5. Plaintiff alleges that Yelp used his identity and associated brand indicia in a manner that falsely suggested authorization, affiliation, endorsement, or lawful commercial use, while denying Plaintiff control over that use and continuing to derive commercial benefit from it.

## II. JURISDICTION AND VENUE

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Lanham Act, 15 U.S.C. § 1125.
7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims because those claims arise from the same nucleus of operative facts.

8. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this District, Plaintiff's business operates here, and the injury to Plaintiff was suffered here.

## III. PARTIES

9. Plaintiff Dominique Davis is a natural person residing in Orange County, Florida.
10. Plaintiff is commonly and publicly known as "Niko." That name is used in connection with Plaintiff's public-facing business activities and commercial identity.
11. Plaintiff is the founder and operator of NiKos, a food-service business whose name, branding, and goodwill are tied to Plaintiff's own identity and reputation. Plaintiff's original complaint and exhibits reflect that the NiKos identifier, logo, business photographs, and public-facing marketing were associated with Plaintiff and his business activity.
12. Defendant Yelp Inc. is a for-profit corporation that operates a commercial online platform through which business listings are displayed, organized, promoted, and monetized.
13. Yelp's business model includes maintaining business pages, attracting consumer traffic, selling advertising, offering paid or enhanced business features, and benefiting commercially from the presence and visibility of business profiles on its platform. Plaintiff's original complaint alleges that Yelp used the NiKos profile, logo, and related identifiers in connection with advertising and paid placements.

## IV. FACTUAL ALLEGATIONS

14. Yelp created and maintains a public-facing page for NiKos on its platform.
15. That page used and displayed identifying material associated with Plaintiff and NiKos, including the NiKos name, logo, photographs, menu-style imagery, business descriptors, and other business-page information. Plaintiff's exhibits included screenshots of the Yelp page, the NiKos truck, logo-bearing materials, search results, and supporting ownership documents.
16. Plaintiff did not consent to Yelp's commercial use of his identity-derived name, logo, branding, and associated business-page presentation in the manner displayed and monetized by Yelp.
17. Yelp did not merely host neutral speech in a vacuum. Yelp created the page structure, chose how information would be displayed on the page, placed the page within Yelp's commercial ecosystem, and used that page as part of a platform that sells visibility, advertising value, and consumer attention.
18. Yelp's platform architecture placed Plaintiff's profile into a commercial setting in which the profile functioned as traffic-generating content. In Plaintiff's original pleading, he alleged that Yelp displayed advertisements and promoted competing businesses in connection with the NiKos page and the business-identifying material shown on it.
19. Yelp also retained control over the profile's presentation and access. Yelp's own business-page system required that businesses "claim" pages in order to exercise some degree of participation or response within Yelp's system, which reflects Yelp's control over whether and how business information appears and is managed on the platform.

20. Plaintiff objected to Yelp's use of the NiKos profile and identifying material. Plaintiff sent notice demanding removal and correction. Plaintiff's filed exhibits included cease-and-desist and follow-up correspondence asserting unauthorized use of the company name, logo, likeness, and false business information, and demanding removal or correction.
21. Yelp did not remove the profile upon Plaintiff's demand. Instead, Yelp responded by invoking internal policy positions and publicly available information concepts while continuing to maintain the profile and its associated commercial value on the platform.
22. Plaintiff alleges that Yelp's continued use of the profile after notice was knowing, deliberate, and commercial in nature.
23. Plaintiff further alleges that Yelp's use of Plaintiff's identity-derived NiKos name and associated branding created a false commercial impression that the profile was authorized, affiliated with, or permissibly associated with Yelp's platform and business model.
24. Plaintiff has suffered injury as a result. That injury includes reputational harm, loss of customer goodwill, diversion of consumers, impairment of control over his identity-derived brand, and financial harm tied to the unauthorized commercial exploitation of the NiKos identity and associated business materials.
25. Plaintiff's theory is not that Yelp is liable simply because third parties can speak. Plaintiff's theory is that Yelp itself took Plaintiff's identity-linked material, embedded it in Yelp's own platform architecture, displayed and controlled it on a revenue-generating page, refused to remove or correct it after notice, and commercially benefited from doing so.

## V. PLAINTIFF'S IDENTITY AS "NIKO"

26. Plaintiff is a natural person commonly known as "Niko."
27. The NiKos identifier is not merely a detached corporate phrase. It is derived from Plaintiff's personal identity and is associated in the marketplace with Plaintiff as the face, source, and public persona behind the business.
28. In commerce, personal identity and brand identity may overlap. Where a personal name or nickname becomes the source-identifying core of a brand, commercial use of that identifier may implicate both identity-based and trademark-based interests.
29. Plaintiff alleges that Yelp used the "Niko/NiKos" identity not merely to describe a fact in passing, but as branded commercial content that supported Yelp's page traffic, user engagement, and monetization.
30. To the extent Yelp contends that NiKos refers only to a business and not to Plaintiff personally, Plaintiff alleges that the NiKos designation is publicly recognized as derived from and identifying Plaintiff, and that Yelp's use of that designation commercially exploited Plaintiff's personal identity and goodwill.

## VI. COUNT I — FALSE ENDORSEMENT / FALSE ASSOCIATION

**Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

31. Plaintiff asserts this count based on Yelp's commercial use of the NiKos name, logo, and associated identity-indicating material in a manner likely to cause confusion as to affiliation, association, sponsorship, approval, or endorsement.
32. Plaintiff possesses protectable rights in the NiKos identifier, associated branding, and the goodwill attached to that identity in connection with his food-service business. Even if the mark is unregistered, Section 43(a) of the Lanham Act protects distinctive identifiers used in commerce where the defendant's commercial use is likely to cause confusion.
33. Yelp used Plaintiff's identity-derived name and associated branding in commerce by publishing and displaying the NiKos page within Yelp's for-profit platform, embedding the page within a monetized environment, and using that content to attract and retain consumer traffic.
34. Yelp's conduct went beyond bare nominative reference. Plaintiff alleges that Yelp created and maintained a branded commercial page, displayed Plaintiff's identity-linked content as part of Yelp's own organized business directory structure, and used that page in a setting that suggested a lawful and commercially integrated association between Plaintiff's identity-linked business presence and Yelp's platform.
35. The likelihood of confusion arises not because consumers merely saw the word "NiKos," but because Yelp's own presentation created the commercial impression that the NiKos profile as displayed on Yelp was authorized, accepted, sponsored, approved, claimed, or otherwise legitimately associated with Yelp's platform and surrounding commercial features.
36. This confusion is strengthened by Yelp's control over page structure, its use of branded images and business identifiers, and its integration of the page into a platform that invites consumer reliance and business participation.
37. Courts have recognized that unauthorized use of identity can support false endorsement claims where the use falsely implies approval or association. See *Allen v. National Video, Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985).
38. Courts recognize that false endorsement under the Lanham Act arises where the unauthorized use of a name, identity, or persona creates a likelihood of consumer confusion as to affiliation, sponsorship, or approval. *See* Allen v. National Video, Inc..
39. The Eleventh Circuit applies a likelihood-of-confusion standard that focuses on whether consumers would mistakenly believe that the plaintiff is affiliated with or endorses the defendant's commercial conduct. *See* Frehling Enterprises, Inc. v. International Select Group, Inc..
40. Even where a defendant references a plaintiff's identity, liability arises where the use exceeds mere identification and creates a misleading commercial association. *See* University of Alabama Board of Trustees v. New Life Art, Inc..
41. Plaintiff alleges that consumers encountering the NiKos page, with its identity-linked name, logo, and images, could reasonably believe that Plaintiff had endorsed Yelp's use, participated in the page, approved its commercial presentation, or maintained a consensual association with Yelp.
42. Yelp's conduct caused Plaintiff injury by impairing his control over his brand, creating false commercial association, diverting consumer understanding, and damaging business goodwill.

43. As a direct and proximate result of Yelp's false endorsement and false association, Plaintiff has suffered damages and is entitled to injunctive relief, monetary damages, and such other relief as the Court deems proper.

## VII. COUNT II — FALSE ADVERTISING / FALSE OR MISLEADING COMMERCIAL REPRESENTATION

To state a claim under § 1125(a)(1)(B), a plaintiff must allege a false or misleading representation of fact in commercial advertising or promotion that is material and causes injury. *See* Lexmark International, Inc. v. Static Control Components, Inc..

Liability attaches where a defendant's own commercial representations—not merely third-party speech—mislead consumers and cause competitive or commercial injury. *See* Hickson Corp. v. Northern Crossarm Co..

### Lanham Act, 15 U.S.C. § 1125(a)(1)(B)

41. Plaintiff asserts this count based on Yelp's own commercial representations and platform-controlled page presentation, not solely on statements made by third-party reviewers.
42. Yelp controls the design, structure, labeling, formatting, and business-page architecture of the pages displayed on its platform. Yelp also controls the "claim this business" mechanism, the display environment, and the commercial integration of business pages with platform monetization.
43. Plaintiff alleges that Yelp's page presentation and associated commercial structure conveyed false or misleading representations of fact, including the misleading commercial impression that the NiKos page was properly presented, lawfully maintained, authorized for use in the manner displayed, or suitably integrated into Yelp's business ecosystem.
44. Yelp's own conduct and page structure also conveyed a misleading impression that the business information and page content were being presented in a commercially fair, neutral, or properly sourced manner, while Yelp in fact retained control, denied Plaintiff control, and benefited from the page commercially after notice of Plaintiff's objections.
45. Under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), a commercial plaintiff injured by false or misleading commercial representations may pursue relief where the injuries fall within the zone of interests protected by the Lanham Act and were proximately caused by the defendant's conduct.
46. Plaintiff's injuries are commercial injuries. Plaintiff alleges loss of customers, loss of goodwill, and loss of control over his market identity arising from Yelp's false or misleading commercial presentation of his identity-linked business profile.
47. Yelp's misleading commercial representations were material because consumers rely on business-page presentation, associated descriptors, and platform context when making decisions about where to eat and which business to trust.
48. As a direct and proximate result of Yelp's false or misleading commercial representations, Plaintiff has suffered damages and is entitled to relief under 15 U.S.C. § 1125(a)(1)(B).

# VIII. COUNT III — VIOLATION OF FLORIDA RIGHT OF PUBLICITY

Florida law protects a natural person's name and identity from unauthorized commercial use. *See* Tyne v. Time Warner Entertainment Co..

The statute applies where a plaintiff's identity has commercial value and is used for trade or advertising purposes without consent.

Whether a name functions as a personal identity rather than a purely fictional or business designation depends on its association with a real individual. *Id.*

Plaintiff alleges that "Niko" is a name by which he is publicly known and commercially identified, and that Defendant used that identity for commercial purposes.

## Fla. Stat. § 540.08

49. Plaintiff asserts this count based on the unauthorized commercial use of his name and identity as a natural person.
50. Florida Statute § 540.08 prohibits the unauthorized use of a natural person's name, portrait, photograph, or other likeness for trade, commercial, or advertising purposes.
51. Plaintiff is a natural person commonly known as "Niko." Plaintiff alleges that the NiKos identity displayed and exploited by Yelp is derived from his personal identity and publicly identifies him.
52. Yelp used Plaintiff's identity-linked name and associated identity-indicating material in a commercial setting. The use was not incidental. It was placed on a revenue-generating platform, used as part of a business-profile page, and maintained in connection with Yelp's broader advertising and monetization structure.
53. Plaintiff did not consent to Yelp's commercial use of his natural-person identity in this manner.
54. Plaintiff alleges that Yelp's use falls within the trade, commercial, or advertising purposes covered by the statute because Yelp used Plaintiff's identity-linked material to populate, support, and commercially exploit a public-facing business page that contributed to Yelp's traffic, visibility, and advertising value.
55. Plaintiff acknowledges that Florida courts distinguish between protected expressive use and commercial exploitation. Plaintiff alleges that Yelp's use here was commercial exploitation because the challenged conduct concerns the creation, maintenance, monetization, and continued use of Plaintiff's identity-linked page within Yelp's for-profit business system.
56. Plaintiff further alleges that this use was not a fleeting news reference, incidental reporting, or purely editorial commentary. It was a continuing, branded, platform-based commercial use.
57. As a result of Yelp's unauthorized commercial use of Plaintiff's identity, Plaintiff has suffered injury, including commercial harm, loss of goodwill, and damage to his identity-based business value.

# IX. COUNT IV — FDUTPA

A practice is deceptive under FDUTPA if it is likely to mislead consumers acting reasonably under the circumstances. *See* PNR, Inc. v. Beacon Property Management, Inc..

A practice is unfair if it offends established public policy or is immoral, unethical, oppressive, or substantially injurious to consumers. *Id.*

FDUTPA applies to conduct that causes actual damages, including business losses resulting from deceptive marketplace practices. *See* Carriuolo v. General Motors Co..

## Fla. Stat. § 501.201 et seq.

58. Plaintiff asserts this count based on Yelp's unfair and deceptive acts or practices in trade or commerce.
59. Yelp operates in trade or commerce when it creates, maintains, displays, and monetizes business pages and when it derives revenue and commercial benefit from consumer engagement with those pages.
60. Plaintiff alleges that Yelp engaged in unfair or deceptive conduct by commercially exploiting Plaintiff's identity-linked business page without consent, by maintaining misleading business-page content or commercial presentation after notice, and by refusing meaningful correction or removal while continuing to benefit from the page.
61. Plaintiff further alleges that Yelp's business-page system is deceptive or unfair to the extent it uses a business's identity, branding, and consumer-facing presence as monetizable platform content while denying the affected business meaningful control absent participation in Yelp's own system.
62. Plaintiff also alleges consumer-facing deception because consumers encountering the NiKos page could be misled into believing the page and its commercial presentation were authorized, accurate, accepted by Plaintiff, or otherwise presented through a legitimate relationship with the business.
63. Plaintiff's original complaint alleged that Yelp's practice involved refusing removal and misrepresenting ownership or control over business profiles; this amended count narrows that theory to Yelp's own commercial conduct and resulting marketplace deception.
64. Plaintiff suffered actual damages as a result of Yelp's unfair or deceptive acts, including loss of business value, loss of goodwill, and related commercial harm.
65. Plaintiff is therefore entitled to relief under FDUTPA.

## X. COUNT V — UNJUST ENRICHMENT

Under Florida law, unjust enrichment requires that the plaintiff conferred a benefit on the defendant, the defendant had knowledge of the benefit, accepted and retained the benefit, and it would be inequitable to retain it without payment. *See* Della Ratta v. Della Ratta.

While indirect benefits are generally insufficient, a benefit may be sufficiently direct where the defendant knowingly uses the plaintiff's assets or identity as part of its own revenue-generating activity.

**Pled in the Alternative**

66. Plaintiff pleads this count in the alternative.
67. Plaintiff conferred a benefit on Yelp in the form of commercially valuable identity-linked content, including the NiKos name, branding, business-page subject matter, and associated goodwill that Yelp used to populate and support its platform.
68. Yelp knowingly accepted and retained that benefit by maintaining the NiKos page, using Plaintiff's identity-linked material to support platform traffic and engagement, and continuing to derive commercial value from that page after notice of Plaintiff's objections.
69. Yelp's retention of that benefit without compensation is inequitable because Yelp denied Plaintiff control over the page while continuing to use Plaintiff's identity-linked content as part of Yelp's commercial business model.
70. Plaintiff acknowledges that Yelp may contend the benefit was indirect. Plaintiff alleges, however, that Yelp's benefit was sufficiently direct because Yelp did not merely receive downstream market effects; Yelp itself took Plaintiff's identity-linked material, embedded it into Yelp's own page structure, displayed it to the public, and monetized the resulting commercial profile.
71. In equity and good conscience, Yelp should not be permitted to retain the value of Plaintiff's identity-linked content and associated goodwill without compensation.
72. Plaintiff therefore seeks restitution, disgorgement, or other equitable relief as permitted by law.

# XI. CLAIMS NOT BARRED BY SECTION 230 TO THE EXTENT ASSERTED AGAINST YELP'S OWN CONDUCT

73. Plaintiff's claims target Yelp's own conduct in creating, structuring, controlling, displaying, maintaining, and commercially exploiting the NiKos page and associated identity-linked material.
74. Plaintiff does not seek in these counts to impose liability on Yelp merely for publishing third-party opinions as such.
75. To the extent Defendant invokes 47 U.S.C. § 230, Plaintiff alleges that his claims are based on Yelp's own commercial conduct and, as to intellectual-property-based theories, fall within the statutory carve-out preserving intellectual property claims.
76. Section 230 does not bar claims based on a defendant's own content or conduct, nor does it bar intellectual property claims. *See* Fair Housing Council of San Fernando Valley v. Roommates.com, LLC.
77. Plaintiff's claims arise from Yelp's own commercial conduct in creating, structuring, and monetizing business pages, not merely from third-party content.

# XII. DAMAGES

76. As a direct and proximate result of Yelp's conduct, Plaintiff has suffered damages, including but not limited to loss of goodwill, loss of business control, reputational injury in the marketplace, diversion of consumers, and other economic harm to be proven at trial.

77. Plaintiff also seeks injunctive relief requiring Yelp to cease unauthorized commercial use of Plaintiff's identity-linked material and to remove or correct the challenged page and associated content to the extent authorized by law.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant Yelp Inc., and award:

A. Compensatory damages according to proof;

B. Disgorgement, restitution, or other equitable monetary relief where permitted by law;

C. Injunctive relief prohibiting continued unauthorized commercial use of Plaintiff's identity-linked material and requiring removal or correction of the challenged profile and associated page content where legally appropriate;

D. Costs and any recoverable attorney's fees or statutory fees authorized by law;

E. Such other and further relief as the Court deems just and proper.

## XIV. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dominique Davis
Plaintiff,

Date: April 13th, 2026